[Civ. No. 29029. First Dist., Div. Four. May 24, 1972.]

RICHARD E. HERNDON, Plaintiff and Appellant, v.
COUNTY OF MARIN et al., Defendants and Respondents.

934

## Counsel

Edgar B. Washburn and Landels, Ripley & Diamond for Plaintiff and Appellant.

James G. Boornazian and Richard G. Logan for Defendants and Respondents.

## Opinion

**DEVINE, P. J.**—Plaintiff appeals from a judgment dismissing his action for damages in the amount of $50,000 general damages and $100,000 punitive damages against the County of Marin, the sheriff, and a deputy sheriff, dismissal having followed an order sustaining defendants' demurrer without leave to amend.[1] The action is based on alleged false arrest and imprisonment. Appellant was arrested on a warrant. ██ ██ ██ He does not allege irregularity appearing on the face of the warrant.[2] His complaint is stated in four counts, but the first and fourth of these may be disposed of readily: ██ The first, because it is an attempt to charge the county with liability for negligence by reason of an asserted mistake by clerks of the municipal court in giving faulty information to the judge who issued the warrant. No action lies in such a case. (Gov. Code, § 821.6; *Watson v. County of Los Angeles,* 254 Cal.App.2d 361 [62 Cal.Rptr. 191].) ██ The fourth cannot be sustained because it is based on asserted negligence of the county in allowing a particular deputy sheriff to act as an arresting officer, although this deputy had falsely arrested

---

[1] Punitive damages would not in any event be allowable against the county. (Gov. Code, § 818.)

[2] Appellant argues that it cannot be assumed that the warrant was valid on its face in view of the allegation that it was "improperly issued." But where the arrest is made with a warrant, it is necessary to allege the facts constituting the invalidity of the legal process. An allegation of improper issue adds nothing to the substantive averments of the complaint. (*Muller v. Reagh,* 215 Cal.App.2d 831, 836-837 [30 Cal.Rptr. 633].)

persons in the past. No such action is permissible. (Gov. Code, § 815.2; *Stearns* v. *County of Los Angeles,* 275 Cal.App.2d 134 [79 Cal.Rptr. 757].)

The second and third causes of action contain the essence of plaintiff's alleged grievance against the county and its officers. On May 10, 1969, plaintiff was cited by a deputy sheriff for two traffic violations. Upon a nonjury trial, appellant was found not guilty of one of the violations, but guilty of the second. He paid a fine of $15 by check, which was deposited by the county treasurer. Subsequently, a new complaint was filed by a deputy clerk or a deputy district attorney, who was negligent in the matter, and a warrant for plaintiff's arrest was issued on the basis of the Vehicle Code violations previously mentioned, and was executed, causing his arrest in the presence of family and friends and imprisonment (the duration of detention is not described).

■ Although an individual has no right of action against a public entity or a public employee arising from malicious prosecution, he may have such a cause for false arrest or false imprisonment. (Gov. Code, § 820.4; Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) §7.4, p. 286; *Shakespeare* v. *City of Pasadena,* 230 Cal.App. 2d 375 [40 Cal.Rptr. 863]; *Culbertson* v. *County of Santa Clara,* 261 Cal.App.2d 274 [67 Cal.Rptr. 752].) The controlling statute in this case is one which antedates the California Tort Claims Act, namely, Civil Code, section 43.5(a), which reads: "There shall be no liability on the part of and no cause of action shall arise against any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if such peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant."

■ The second asserted cause of action is predicated on knowledge, imputed or actual, on the part of the deputy sheriff, of facts dehors the warrant. It is alleged that the deputy sheriff "in the exercise of due care should have known" that the warrant for plaintiff's arrest was improperly issued. This clearly cannot support a cause of action for false arrest because of the provisions of section 43.5(a). It is further alleged that the deputy sheriff *knew* that a final judicial determination of all aspects of the citation had been made (he had been a witness at the trial), and that the arrest warrant therefore was improperly issued. But this, too, is insufficient. Section 43.5(a) exempts an officer from liability if he makes the arrest on a warrant regular on its face (the subject of malice is discussed below; here we are considering "knowledge"). It is not his duty to investigate the procedure which led to the issuance of the warrant, nor is there any obligation on his part to pass judgment upon the judicial act of issuing the warrant or to reflect upon the legal effect of the adjudication. On the

contrary, it is his duty to make the arrest. (Pen. Code, § 142; Code Civ. Proc., § 262.1; *Vallindras* v. *Massachusetts etc. Ins. Co.,* 42 Cal.2d 149, 153-154 [265 P.2d 907]; *People* v. *Weitzer,* 269 Cal.App.2d 274, 294-295 [75 Cal.Rptr. 318]; *Barrier* v. *Alexander,* 100 Cal.App.2d 497 [224 P.2d 436]; *Burlingame* v. *Traeger,* 101 Cal.App. 365, 369-370 [281 P. 1051]; *Downey* v. *Allen,* 36 Cal.App.2d 269, 273 [97 P.2d 515].) Even though the officer knew of the prior "final judicial determination," it was not his duty to demur to execution of the later judicial act of issuing the warrant. "[S]o long as it [the warrant] is valid upon its face, the weight of authority probably is that the officer is privileged to execute it even though he has personal knowledge of facts which should prevent the arrest, and may safely leave all responsibility to the court." (Prosser, Law of Torts (4th ed. 1971) p. 128; accord, Rest.2d Torts, § 124, p. 214.) In *Malone* v. *Carey,* 17 Cal.App.2d 505 [62 P.2d 166], a judgment of dismissal upon sustaining of demurrer of a false imprisonment action was affirmed although it was alleged that all of the defendants (one of whom was the arresting officer) "well knew" that the arrest was unlawful and there was also an allegation that plaintiff had satisfied the fine which had been imposed in a traffic case. Although the complaint was defective in so far as it contained a conclusionary allegation ("unlawfulness" of the arrest), the decision was also based on the proposition that, the warrant being valid on its face, it was the officer's duty without delay to carry out its commands. For an officer wilfully to neglect or violate his duty would constitute contempt of court. (Code Civ. Proc., § 1209, subd. 3; *Pankewicz* v. *Jess,* 27 Cal.App. 340, 342 [149 P. 997].)

Sound public policy underlies the immunity. Not only is the peace officer not obliged to make inquiry into the validity of the court's action, but it could be obstructive of the court's process if he were to do so. Despite the officer's "knowledge" of the state of affairs, as alleged after the event, in this particular case, it could be that what was taken for "knowledge" could be defective in a given case, either as to facts which preceded the issuance of the warrant or as to the legal effect of the facts, and that the officer's refusal or hesitation or even inquiry into the matter would interfere with prompt and efficient execution. It is true that in the case before us there was but a misdemeanor charge, but we are dealing with the interpretation of a statute which has broad effect. Many warrants for arrest are for felonies and for the apprehension of dangerous criminals. That the peace officer should not be required to do other than to see that the warrant is regular on its face comports with the right of the public to expedition and the right of the officer to protection when he does what a judicial officer has directed him to do.[3]

---

[3]We are aware that in *Johnson* v. *State of California,* 69 Cal.2d 782, 790, 793 [73

■ The third asserted cause of action is based on alleged malice. The complaint repeats allegations about the information possessed by the officer. Besides these, we take as equivalent to an allegation a declaration by plaintiff's counsel made in his brief in the superior court: "Although it is not alleged in the complaint, plaintiff could amend the complaint to allege that at the time defendants sought to arrest plaintiff with the invalid warrant, he informed defendants that a mistake had been made and requested that the Judge who signed the warrant be contacted and informed of the facts. Nevertheless, the Judge was not contacted and plaintiff was arrested by defendants." We take the substance of this as if it were part of the complaint because amendment was not allowed, and the complaint, to which demurrer was sustained without leave to amend, was the original pleading.

Plaintiff's contention is that because Civil Code, section 43.5(a) grants immunity to the officer who acts "without malice," it necessarily denies immunity to an officer who does act with malice and that malice is present here. Respondents reply that it was not intended by the Legislature to impose liability in all arrest cases where the peace officer has acted with malice in executing a warrant, but that it was intended merely to protect officers in cases where the wrong person has been arrested. This intention, say respondents, is to be found by considering the circumstances which gave rise to enactment of the statute in 1945, and the decision of the Legislature to curb the effect of the decision in 1944 in *Walton v. Will*, 66 Cal.App.2d 509 [152 P.2d 639], in which a judgment for plaintiff was upheld, largely because the officer had failed to follow a simple investigation which had been urged for the purpose of showing that plaintiff, though bearing the same name as that of the man to be arrested, was not really the one wanted. The statute was intended, say respondents, to give more protection to the officer. (See 2 Witkin, Summary of Cal. Law (1960) pp. 1254-1255.)

We need not decide what effect the words "without malice" in the statute, which in its general effect is intended to preserve or to enlarge the officer's immunity, may have in the opposite direction where there is malice. Perhaps, however, by reasoning from the converse, one might conclude that acts (other than arresting the wrong person) which are

Cal.Rptr. 240, 447 P.2d 352], the "dampened ardor" argument was rejected as it may apply to cases against public officers in general; but in that case, there was no specific immunity granted, as there is in this case, by Civil Code, section 43.5(a). Moreover, the indemnity provided for public officers applicable in the *Johnson* case, which was a negligence action, does not apply in cases of punitive damages. (Gov. Code, § 818.)

malicious and which are closely connected with the arrest itself would remove immunity even though the warrant were fair on its face.[4] But the essential fault in the instant case was the negligence of public employees in the administration of the judicial process. The peace officer is not to be held responsible for complying with his precept. Nor was it his duty to make inquiry upon appellant's request. He could rely on the warrant as the expression of the judicial will. Whatever inquiry by the officer may be necessary since the enactment of Civil Code, section 43.5(a), when a prospective arrestee asserts that he is not the one meant to be arrested, need not be considered; the identifying of the arrestee is a ministerial act within the competence of the officer, but the decision to issue the warrant is a judicial act.

The judgment of dismissal is affirmed.

Rattigan, J., and Bray, J.,* concurred.

---

[4]Examples of what may be such malicious acts may be found in Bohlen & Shulman, *Effect of Subsequent Misconduct Upon a Lawful Arrest*, 28 Colum.L.Rev. 841, 858. As one example, "the actor may misuse his official power over the prisoner in order to coerce him to comply with some demand which has no relation to the purpose of presentment before a proper court in the due course of administration of the criminal law, as for example, to compel the prisoner to restore property, or to pay money, or, perhaps, to disclose evidence against himself or others." (*Id.*, at p. 841.)

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.